1

2

3            UNITED STATES DISTRICT COURT

4            NORTHERN DISTRICT OF CALIFORNIA

5                  OAKLAND DIVISION

6

7   LONNIE DONELL PERKINS,

8              Plaintiff,                    No. C 09-5855 PJH (PR)

9        v.                                  **ORDER DENYING IN PART
                                             AND GRANTING IN PART
10  L. CHRONES, Director, California          DEFENDANTS' MOTION FOR
    Department of Corrections; ROBERT        SUMMARY JUDGMENT**
11  HOREL, Former Warden, Pelican Bay
    State Prison (PBSP); FRANCISCO
12  JACQUEZ, Warden (PBSP); K.
    BRANDON, Captain at PBSP; McMillan,
13  Lieutenant at PBSP; B. THORNTON,
    Correctional Officer at PBSP; A.
14  HEDGPETH, Warden at Kern Valley
    State Prison (KVSP); C. J. CHRONES,
15  Chief Deputy Warden, KVSP; J. R.
    GARZA, Lieutenant, KVSP; O. C.
16  HARRIS, Correctional Sergeant, KVSP;
    J. OSTRANDER, Captain, KVSP; R.
17  CRUM, Correctional Officer, KVSP; C.
    PFEIFFER, Correctional Counselor II,
18  KVSP; R. CLEMONS, Correctional
    Officer, Los Angeles County (LAC);
19  EVERETTE W. FISCHER, Special
    Agent, CDCR; G. WILLIAMS, Special
20  Agent, CDCR; McGRIFF, Special Agent,
    CDCR; K. J. ALLEN, Appeals Examiner,
21  CDCR; and N. GRANNIS, Chief of
    Inmate Appeals Branch, CDCR,
22
               Defendants.
23  _____/

24

25       This is a civil rights case filed pro se by a state prisoner.  Defendants Thornton,

26  McMillan, Allen, and Brandon ("defendants") have moved for summary judgment, plaintiff

27  has opposed the motion, and defendants have filed a reply. The motion is ready for

28  decision.

**United States District Court**
For the Northern District of California

1

**BACKGROUND**

2    Plaintiff presented two groups of claims in his original complaint, one that his due

3    process rights were violated in connection with his validation as a member of the Black

4    Guerilla Family prison gang, and one that his rights were violated when he was not allowed

5    to mail out a portion of his autobiography.  In its initial review order, the court dismissed the

6    validation claims as improperly joined and allowed the claims involving the autobiography to

7    proceed against Thornton, Brandon, McMillan, and Allen.  It dismissed the autobiography

8    claims against Jacquez, Chrones, Horel and Grannis as impermissible respondeat superior

9    claims.

10    Plaintiff subsequently filed an amended complaint in which he makes clear that he is

11    raising both First Amendment and due process challenges to the ban on sending out his

12    autobiography.

13

**DISCUSSION**

14    **I.    Standard of Review**

15    Summary judgment is proper where the pleadings, discovery and affidavits show

16    that there is "no genuine issue as to any material fact and that the moving party is entitled

17    to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may

18    affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

19    A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury

20    to return a verdict for the nonmoving party.  *Id.*

21    The moving party for summary judgment bears the initial burden of identifying those

22    portions of the pleadings, discovery and affidavits which demonstrate the absence of a

23    genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan*

24    *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving

25    party has met this burden of production, the nonmoving party must go beyond the

26    pleadings and, by its own affidavits or discovery, set forth specific facts showing that there

27    is a genuine issue for trial.  If the nonmoving party fails to produce enough evidence to

28    show a genuine issue of material fact, the moving party wins.  *Id.*

United States District Court

For the Northern District of California

## II.      Analysis

### A.      First Amendment Claim

#### 1.      Outgoing Mail Standard

Prisoners enjoy a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The *Turner* standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. *Thornburgh*, 490 U.S. at 413.  In the case of outgoing correspondence from prisoners to non-prisoners, however, an exception to the *Turner* standard applies.  Because outgoing correspondence from prisoners does not, by its very nature, pose a serious threat to internal prison order and security, there must be a closer fit between any regulation or practice affecting such correspondence and the purpose it purports to serve.  *Id.* at 411-12. Censorship in such instances is justified only if (1) the regulation or practice in question furthers a legitimate penological interest, and (2) the limitation on First Amendment freedoms is no greater than necessary to further the particular government interest involved.  *Procunier v. Martinez, 416 U.S. 396, 413 (1974), overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *see, e.g., Witherow*, 52 F.3d at 265-66 (regulation requiring visual inspection of outgoing mail from inmates to certain public officials closely related to legitimate penological interest of preventing prisoners from disseminating harmful or offensive materials and avoids unnecessary intrusion).  This is not, however, a "least restrictive means" test.  *Id.* at 265.

#### 2.      Application

Defendants have the burden to show that there is no genuine dispute of fact as to their contention that the confiscation furthered an important penological interest and that confiscating the autobiography was no more than was necessary to protect that interest.

3

United States District Court

For the Northern District of California

1    *See Procunier*, 416 U.S. at 413, 415 (burden is on prison authorities to show elements).

2    Here, defendants' failure to provide the autobiography itself in support of their motion

3    makes that burden difficult to carry.

4    Prison officials confiscated plaintiff's autobiography as promoting gang activity in

5    violation of section 3023(a) of Title 15 of the California Code of Regulations, and as

6    contraband in violation of section 3006(c)(11).   Certainly preventing, or at least impeding,

7    criminal gang activity is a legitimate penological interest.   The question remains, however,

8    whether seizing the autobiography furthered that interest, and that is where defendants'

9    failure to provide the court with a copy of the manuscript is fatal to their motion.

10    Defendants have not provided the manuscript, and their declarations say little about

11    the contents of the autobiography.   In his declaration in support of the summary judgment

12    motion, defendant Thornton says only that the autobiography "described gang activity that

13    Perkins had been involved in, which related to other inmates and victims that occurred

14    during his incarceration," and claims – with no more description of the contents than that

15    quoted above – that "[i]t is reasonable to believe that, if Perkins were able to mail out that

16    portion of the autobiography, it would be used to further the promotion of gang activity."

17    Decl. Thornton at ¶ 7.   Defendant McMillan provides the same language as that in the first

18    quotation above, and claims that "[b]ased on my experience and training, it is reasonable to

19    believe that, if Perkins were able to mail out that portion of the autobiography, it would be

20    disseminated as a historical background of the crimes that Perkins and others have

21    participated in, and it would serve to further the promotion of gang activity . . . ."   Decl.

22    McMillan at ¶ ¶ 21, 23.

23    Plaintiff's declaration does not fill in the gaps.   He says that the autobiography

24    contained descriptions of gang-related incidents in prison and on the streets, but it is not

25    possible to determine from the declaration exactly what he said about these incidents in the

26    manuscript.

27    Plaintiff argues that the gang incidents that occurred in prison were the basis for

28    rules violation reports, copies of which he was allowed to mail out; that the events

4

described in the autobiography happened long ago; and that much of the manuscript was about his feelings and emotions regarding them.  Decl. Perkins at ¶ ¶ 12-13, 19-20, 44. None of these things means that the manuscript did not further gang activity, however; for instance, even events ten or more years ago might cause gang members to feel a need to retaliate, if they knew of them, and knowing of plaintiff's emotions regarding the events might encourage such retaliation.

In the absence of the manuscript itself, or a declaration containing a more extensive description of it, defendants' have failed to carry their burden of showing that barring plaintiff's autobiography from the mail furthered the institution's interest in controlling gang activity, nor have they shown that their action was no more than what was necessary to further the particular government interest involved.

The motion will be denied as to the First Amendment claim.  Because it appears to the court that it might be possible to resolve this case on summary judgment if a more comprehensive record is provided, a new deadline for dispositive motions will be set.

### B.   Due Process Claim

As defendants point out, plaintiff has not opposed their contention that they are entitled to summary judgment on his due process claim.  A district court may grant an unopposed motion for summary judgment if the movants' papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact.  *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995), *rev'd on other grounds sub nom. Degen v. United States*, 517 U.S. 820 (1996).  Here, the movants' papers do not reveal a genuine issue of material fact.  The summary judgment motion will be granted as to this claim.

### CONCLUSION

1.  Plaintiff's motion for an extension of time (document number 45 on the docket) is **GRANTED**.  The opposition is deemed timely.

2.  For the foregoing reasons, defendants' motion for summary judgment (document number 37) is **DENIED IN PART AND GRANTED IN PART**.  It is **GRANTED** as to

United States District Court
For the Northern District of California

plaintiff's due process claim and **DENIED** without prejudice as to his First Amendment

claim.

      3.  The deadline for any new dispositive motion is thirty days from the date this order

is entered.  Any opposition shall be filed within thirty days of the date a motion for summary

judgment is served, and any reply within fourteen days of the date an opposition is served.

     **IT IS SO ORDERED.**

Dated:  September 29, 2011.        _____

                         PHYLLIS J. HAMILTON
                     United States District Judge

**United States District Court**

For the Northern District of California

P:\PRO-SE\PJH\CR.09\PERKINS5855.MSJ.wpd